IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

GEORGE GADD                                      *
                                                 *
                        Plaintiff,               *
                                                 *
vs.                                              *        No. 4:08CV00636 SWW
                                                 *
UNITED STATES OF AMERICA,                        *
                                                 *
                        Defendant.               *

**Memorandum Opinion and Order**

This action came on for hearing August 21, 2008, upon plaintiff's complaint seeking a

preliminary injunction to prohibit defendant from removing him from his federal job pending

resolution of an Administrative EEO complaint he filed on February 27, 2008.  For the reasons

stated at the conclusion of the hearing and set out below, the Court finds the application for

preliminary injunction should be denied and this case dismissed.

**Findings of Fact**

Plaintiff is employed by the Drug Enforcement Administration ("DEA") in Little Rock,

Arkansas, as a Diversion Investigator.  In early November 2007, plaintiff submitted a written request

for reasonable accommodation of a disability based on carpal tunnel due to diabetes that limits his

ability to type.  Plaintiff attached related medical documents to his request.  When Special Agent

in Charge ("SAC") William Renton, who was based in New Orleans, Louisiana, learned about the

request, he told Donald Hickman that he wanted plaintiff to voluntarily withdraw his request.  Mr.

Hickman was the diversion program manager and plaintiff's second line supervisor. Plaintiff agreed to withdraw his request. However, because it was in writing, DEA policy required that the request be ruled on even though it had been withdrawn.

Mr. Hickman decided to grant the request for accommodation. When Renton learned that Hickman had approved the request, he was furious. SAC Renton launched a medical inquiry based upon the request and the medical records submitted in support. He also directed that plaintiff's government car be taken away and that plaintiff be driven home. Renton stated that if plaintiff could not type, he could not drive.

Plaintiff received a letter dated January 11, 2008, requesting additional medical information. The letter also contained a medical advisory recommending that plaintiff be placed on limited duty. In late January 2008, Renton directed that plaintiff refrain from participating in any operations outside the physical confines of his Little Rock office. In May 2008, plaintiff learned that the DEA was proposing to remove him from his position because of his inability to perform his job duties. No fitness evaluation has been performed to determine whether plaintiff has a medical condition that prohibits him from performing his duties. Plaintiff has several serious medical conditions, but there is no convincing evidence that he is, in fact, unable to perform his job duties.

Plaintiff has two pending EEO complaints and a pending a complaint before a "deciding officer" regarding plaintiff's proposed removal for medical reasons.

Mr. Hickman has retired from the DEA and wrote a letter after his retirement outlining what had transpired with plaintiff and his request for reasonable accommodation. Mr. Hickman waited until after his retirement to write the letter because he feared retaliation. Carolyn Adams, plaintiff's first line supervisor, would not recommend plaintiff for a promotion following these events because

she was told not to provide anything on plaintiff's behalf.  Others who are not named have indicated

they want to stay out of this dispute.

Mr. Hickman testified that plaintiff's situation is well known among DEA diversion

investigators.  Plaintiff's co-workers, however, seem to have extremely limited understanding of

plaintiff's case.  They testified they do not feel intimidated by their superiors.  Plaintiff's co-workers

testified that plaintiff discusses his case but talks about getting money from the government and does

not seem to be emotionally distressed about the situation.

### Conclusions of Law

Whether a preliminary injunction should issue involves consideration of:

   (1) the threat of irreparable harm to the movant should the request for an injunction not be
       granted;
   (2) the balance between this harm and the injury that granting the injunction will inflict on
       other parties involved in the case;
   (3) the probability that the movant will succeed on the merits of the underlying case; and
   (4) the public interest.

*See Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981).  The absence of a

finding of irreparable harm to the movant is sufficient grounds upon which to deny a preliminary

injunction. *Id*. at 114 n.9.  *See also United Indus. Corp. v. Clorox Corp.,* 140 F.3d 1175, 1183 (8th

Cir. 1998)(failure to demonstrate irreparable harm is, by itself, a sufficient ground upon which to

deny a preliminary injunction).    The chilling effect of unrestrained retaliation can be irreparable

injury justifying a preliminary injunction. *Adam-Mellang v. Apartment Search, Inc.,* 96 F.3d 297,

301 (8th Cir. 1996).

Here, the strongest evidence of the threat of irreparable harm here is Hickman's testimony

that the series of events involving plaintiff has had a chilling effect on Hickman and others in the

DEA.  However, plaintiff's co-workers in Little Rock apparently do not share this view.  In *Marxe*

*v. Jackson*, 833 F.2d 1121, 1126 (3rd Cir. 1988), a case cited in *Adam-Mellang*, the court stated that

whether or not intimidation

> has occurred in a given case, or will occur in the future, will depend on a host of factors, including but not limited to: the atmosphere at the place of employment; the breath of knowledge within the place of employment about the discharge; the nature of the incident or incidents that precipitated the discharge; the presence or absence of alternative explanations for the employer's action; the personality of the potential witness and the degree of his or her aversion to litigation; the witnesses' view of the alleged victim; any relationship between the two; and the employer's past treatment of the potential witness.

While not all of these factors apply here, the evidence suggests that even though Hickman knew about plaintiff's situation and felt intimidated, plaintiff's co-workers testified they do not feel intimidated. The Court finds there is insufficient evidence of widespread intimidation and insufficient evidence of a threat of irreparable harm.

Regarding the likelihood of success on the merits, there is evidence that Renton acted willfully and in retaliation. He complained about other problems experienced in the Little Rock office and used vulgarity to describe plaintiff's activity in submitting a request for reasonable accommodation. The evidence is convincing that Renton acted improperly. There is also evidence that the DEA failed to follow its own rules with respect to removing an employee on the grounds of lack of fitness. Plaintiff received a notice of his proposed removal, but the Court finds convincing plaintiff's testimony that there were serious deficiencies in the doctor's evaluation upon which the removal is based. It appears that Dr. Kukolija simply made some conclusions about plaintiff's ability to perform certain physical requirements based upon records plaintiff submitted, without an examination of his fitness for duty. Plaintiff has not had a fitness evaluation.

The Court finds plaintiff may have a very strong case on the merits, and it appears from the evidence that the agency may be running roughshod over its own regulations. The Court is not,

however, persuaded that plaintiff will be successful on his claim that the DEA acted improperly in considering the medical records plaintiff submitted in support of his request for accommodation for its determination that plaintiff was not fit to perform his job duties.

A third *Dataphase* factor is the balance of harm.  In *Sampson v. Murray*, 415 U.S. 61, 83 (1974), the Supreme Court stated:

> The District Court, exercising its equitable powers, is bound to give serious weight to the obviously disruptive effect which the grant of the temporary relief awarded here was likely to have on the administrative process.  When we couple with this consideration the historical denial of all equitable relief by the federal courts in cases such as *White v. Berry*, the well-established rule that the Government has traditionally been granted the widest latitude in the 'dispatch of its own internal affairs,' and the traditional unwillingness of court of equity to enforce contracts for personal service . . . we think that the Court of Appeals was quite wrong in routinely applying to this case the traditional standards governing more orthodox stays.

Even though *Sampson* recognized that an injunction could issue in an extraordinary case, the Court is not convinced that the facts of this case are sufficiently extraordinary to warrant the Court's intervention in this litigation.

The Court further finds that the public interest weighs in favor of defendant because plaintiff has not exhausted his administrative remedies.  The public interest, the Court finds, is in allowing the administrative process to complete its course before the Court gets involved.

The Court finds plaintiff has failed to carry his burden of proof that a preliminary injunction should be granted.

**Conclusion**

IT IS THEREFORE ORDERED that the application for preliminary injunction be and is hereby denied and the complaint be and is hereby dismissed.  Defendant's motion to dismiss for

failure to state a claim or, in the alternative, for summary judgment is denied as moot.  Each side

will bear its own fees and costs.

DATED this 26th day of August 2008.


/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE